IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISON

| | |
|---|---|
| **JOHN DOE**<br>*Plaintiff*<br><br>v.<br><br>**STEWART COUNTY, TENNESSEE, and DANA SALTKILL**<br>*Defendants* | **Case No.**<br>**JURY DEMAND** |

**COMPLAINT**

Comes now Plaintiff, JOHN DOE, by undersigned counsel for his complaint against the Defendants states the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendants Stewart County, Tennessee and Stewart County Sheriff's Deputy Dana Saltkill for violation of Plaintiffs' federally protected rights against the unwanted and unwarranted disclosure of private sexual information. Plaintiff seeks damages and other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 28 USC § 1331 with this Complaint arising under a violation under 15 USC § 6851 and 42 USC § 1983. Plaintiff asserts claims for relief under 15 USC § 6851 which authorizes action to redress the nonconsensual transfer of intimate visual depictions using instrumentalities of interstate commerce.

3. This Court is a proper venue for this action pursuant to 28 USC § 1391(b)(1) and 28 USC § 1391(b)(2) because the Defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

4. Defendant Stewart County, Tennessee ("Stewart County") is a municipal governmental entity organized under the laws of the State of Tennessee and located in Stewart County, Tennessee.

5. Dana Saltkill ("Investigator Saltkill") is an adult resident of Stewart County, Tennessee. Investigator Saltkill is a Sheriff's Deputy with the Stewart County Sheriff's Office and he is sued in his individual capacity.

6. John Doe is an adult resident of Stewart County, Tennessee.

## FACTUAL ALLEGATIONS

7. Plaintiff John Doe is a Colonel in the United States Army National Guard. He is a professional, and a father. John Doe is married. He has no criminal record.

8. John Doe is primarily engaged in his civilian career, with only part-time obligations to the Army National Guard ("the Guard").

9. John Doe's status with the Guard is under Title 32, meaning that his is generally not on active duty. He generally serves only part time but can also be called up in the case of an emergency.

10. John Doe is in an adult and married.

11. In October 2024, John Doe spent the weekend at the Opryland Hotel with his wife and two friends of theirs, S.M and K.T.

12. S.M and K.T., like John Doe, serve in the Guard.

13. Neither John Doe nor S.M and K.T. were on duty during the Opryland Hotel weekend.

14. During this weekend at the hotel, John Doe and his wife engaged in consensual sexual intercourse with each other, S.M. and K.T. in the privacy of the hotel room ("the Opryland Hotel episode.").

15. John Doe made a video recording of the Opryland Hotel episode ("the Opryland Hotel video") which had intimate visual depictions of John Doe, his wife, S.M and K.T.

16. By "intimate visual depictions" as referenced in Paragraph 15, Plaintiff refers to videos and photographs that depict identifiable individuals (including John Doe and his wife) engaging in sexually explicit conduct.

17. On the morning of February 10, 2025, John Doe was arrested by the Stewart County Sheriff's Office and charged with misdemeanor Domestic Assault for an incident related to his wife.

18. The same morning, Stewart County Sheriff's deputies executed a search warrant on John Doe's office and seized various documents, records, and information.

19. One of the items seized by Stewart County was John Doe's cellphone.

20. On information and belief, Stewart County deputies then enlisted the assistance of the Tennessee Bureau of Investigation ("TBI") to extract the contents of John Doe's cellphone.

21. On information and belief, TBI agents extracted the contents of John Doe's

cellphone, reviewed them, and became aware of the Opryland Hotel episode and video.

22. On information and belief, the TBI also provided the extraction files to the Stewart County Sheriff's Office, including the Opryland Hotel video.

23. Investigator Saltkill reviewed the contents of John Doe's phone and became aware of Opryland Hotel episode and video.

24. On or around February 25, 2026, Defendant Saltkill set up an interview with John Doe's wife, under the guise that he was setting up a meeting between her and DCS.

25. When John Doe's wife arrived to what she believed was a DCS interview, Defendant Saltkill was present and began questioning her in an attempt to have her provide evidence against John Doe in the domestic violence case.

26. During the interview, Saltkill showed John Doe's wife a copy of the video from the Opryland Hotel and other intimate visual depictions on John Doe's phone.

27. John Doe's wife identified S.M and K.T. as participants in the Opryland Hotel episode but emphasized that the episode had been private, and that S.M. and K.T. were not in any way involved in any wrongdoing.

28. John Doe's wife asked Investigator Saltkill if anything on the video was illegal.

29. Investigator Saltkill said words to the effect of "no, but it makes me sick."

30. The Opryland Hotel episode and video had no correlation to the domestic violence charges against Plaintiff.

31. John Doe's wife ended the meeting and stated she would not testify against

John Doe.

32. On February 18, 2025, the Stewart County General Sessions Court issued a protective order prohibiting law enforcement from sharing, distributing, or disclosing any of the "documents, information, or records" obtained from John Doe, which included the Opryland Hotel video :

> 2. That the State of Tennessee or its investigators, agents, or assigns shall not share, distribute or disclose any documents, information, records, or anything obtained in reference to the search warrant executed at [redacted]

33. The TBI agents involved in the case were made aware of the protective order.

34. Investigator Saltkill and other Stewart County Sheriff's Office staff involved in the case were made aware of the protective order.

35. On or about February 20, 2025, aware of John Doe's arrest and criminal charges, Army National Guard unit personnel contacted the TBI to request a copy of John Doe's criminal charges so that they could file a "serious incident report" pursuant to military regulations.

36. TBI agents discussed John Doe's case with the Guard personnel over the phone.

37. During the call, a TBI agent violated the protective order by disclosing the existence of the Opryland Hotel video to the Guard personnel.

38. However, another TBI agent present for the call quickly shut that conversation down, explaining that they could not discuss the topic because of the protective order.

39. At some point in late February or early March 2025, Defendant Saltkill, for perhaps salacious reasons, provided the Guard with a copy of the Opryland Hotel video.

40. John Doe's private act of consensual sexual intercourse did not violate any Tennessee state laws.

41. John Doe's private act of consensual sexual intercourse, conducted while he was off-duty, did not violate any U.S. military regulations.

42. It was apparent from the circumstances of the video, and from Saltkill's investigation, that the participants in the Opryland Hotel episode considered it to be a private act. It was also apparent that the episode had nothing to do with the charges against John Doe.

43. Saltkill had no duty to provide the video to the Guard, and no legitimate investigative purpose for doing so.

44. Saltkill was fully aware of the protective order barring him from distributing the video when he made the choice to do so, which he did in blatant defiance of it.

45. Tennessee's "Unlawful Exposure" statute, T.C.A. § 39-17-318, makes it a criminal offense to distribute a recording of a private sexual act where the circumstances make it apparent that the participants understood the act to be private.

46. On March 1, 2025, as a result of Saltkill's disclosure and distribution of the Opryland Hotel video, the Guard flagged John Doe in IPPS-A, the Army's online human resources system.

47. The impact of a "flag" is to block a soldier's ability to obtain a promotion or transfer while the flag is pending.

48. On March 1, 2025, Guard notified John Doe that he was under investigation as a result of the pending domestic violence proceedings against him, but also that "The Flag will be removed when the investigation and/or court action is completed and (1) there are no adverse findings against you, (2) you receive an adverse action Flag as a result of adverse findings against you, or (3) the decision is made to take no action against you."

49. All three misdemeanor charges against John Doe were dismissed without any adverse findings.

50. The Flag in John Doe's IPPS-A remains active based on Investigator Saltkill's disclosure to the Tennessee National Guard.

## CLAIMS FOR RELIEF

### COUNT I: INVASION OF PRIVACY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983) (DEFENDANT SALTKILL)

51. Paragraphs 1 through 48 above are incorporated herein as if fully restated verbatim.

52. Defendant Saltkill illegally disclosed to the Guard of Plaintiff having consensual sexual intercourse in a private place.

53. Defendant Saltkill had no legitimate investigative purpose for the disclosure.

Indeed, the alleged victim in this case was investigating had explicitly explained that the video was private.

54. Defendant Saltkill was aware prior to his disclosure that a court order had already been issued barring distribution of the video.

55. Defendant Salkill made the improper disclosure in his capacity as an investigator for the Stewart County Sherriff's Office, acting under color of law.

56. Defendant Saltkill acted in wanton and intentional disregard for Plaintiff's rights.

57. Plaintiff has been severely humiliated and distressed from the disclosure and face the prospect of suffering severe financial harm and permanent career damage.

**COUNT II: SHERIFF'S STATUTE**
**(T.C.A. § 8-8-302)**
**(DEFENDANT STEWART COUNTY)**

58. Paragraphs 1 through 48 above are incorporated herein as if fully restated verbatim.

59. Defendant Saltkill, a Stewart County Sheriff's Office investigator, violated Plaintiff's right to privacy in matters of sexual behavior.

60. Defendant Saltkill's actions were taken under color of law, within the scope of his official duties to the Sheriff's office.

61. Defendant Stewart County is liable for its Sheriff's deputies' misconduct.

**COUNT III: VIOLATION OF THE VIOLENCE**
**AGAINST WOMEN ACT**
**(15 U.S.C. § 6851)**
**(DEFENDANT SALTKILL)**

62. Paragraphs 1 through 48 above are incorporated herein as if fully restated

verbatim.

63. Defendant Saltkill transmitted intimate visual depictions of Plaintiff Doe without his consent as described supra.

64. Defendant Saltkill transmitted these intimate visual depictions of Plaintiff Doe using a computer connected to the internet and telecommunications networks capable of transmitting and receiving data by electronic means.

65. Defendant Saltkill intentionally, and in bad faith, disclosed the intimate visual depictions of John Doe in violation of the February 18, 2025 protective order.

## DAMAGES

66. As a direct and proximate result of Defendant Saltkill's intentional disclosure of John Doe's intimate visual depictions, John Doe has suffered:

   **a.** Humiliation

   **b.** Reputational harm

   **c.** Loss of past and future income

   **d.** Mental and emotional distress

## REQUEST FOR RELIEF

Based upon all the foregoing, Plaintiff requests:

I. Process be issued and that Defendants be required to respond within the time provided by Federal Rules of Civil Procedure.

II. That this case be tried by a jury;

III. That judgement for Plaintiff be entered against the Defendants on each count;

IV. That Plaintiff be awarded actual damages or liquidated damages in the amount of $150,000.00 per violation of 15 USC § 6851;

V. That Defendants be ordered to destroy any copies they may still have of the video at issue in this case;

VI. That Plaintiff be awarded attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 USC § 1988 and Fed.R. Civ. P. 54(d);

VII. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interest of justice.

Respectfully Submitted,

*/s/ Sarah Mansfield*
Wesley Ben Clark, #32611
Sarah Mansfield, #39476
Paul D Randolph #39667
BRAZIL CLARK, PLLC
760 East Argyle Avenue
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
sarah@brazilclark.com
paul@brazilclark.com